In the Matter of the PEOPLE OF THE STATE OF NEW YORK, Petitioner-Respondent, v. COMPACT ASSOCIATES, INC., et al., Respondents-Appellants.

First Department, December 3, 1964.

130

*Joseph A. Bailey* of counsel (*Samuel A. Hirshowitz, Barnett Levy, James Princiotta* and *Mark T. Walsh* with him on the brief; *Louis J. Lefkowitz, Attorney-General of the State of New York*), for respondent.

*Thomas D. Edwards* of counsel (*Hale, Russell & Stenzel*, attorneys), for appellants.

*Per Curiam.* This action is brought by the Attorney-General for an injunction pursuant to subdivision 12 of section 63 of the Executive Law. The section provides that "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business" the Attorney-General is authorized to bring the proceeding. After an extended trial, the court sustained the charges of the Attorney-General.

Objection is based on two grounds: first, that persistent fraud was not established; second, that even if it were established as against certain defendants, it was not as against others.

Taking these propositions in order, we believe that "persistent fraud" in the context of the statute was established. Without, for the moment, differentiating between the defendants, it was shown that their business was the sale of vacuum cleaners at retail. The method of procedure was as follows: A salesman would call at the prospective buyer's residence and explain that he wished to demonstrate a new product. He would not reveal the nature of the product, but would explain that the seller did not advertise and consequently had funds for promotion. He would then pay the housewife $5 in cash or trading stamps for the privilege of giving the demonstration. He would also present her with a paper called a "Bond of Friendship" which presumably evidenced the friendly relationship of the parties. He would then demonstrate the machine and attempt to make a sale and have her sign a conditional sales contract. At this

stage, as circumstances would require, different procedures would be adopted. Invariably, however, it was explained to the prospect that if she gave the salesman any leads that developed into sales, she would get a $25 credit for each sale made; and even when no sale eventuated, a credit would be given of $12.50 for every four instances where a demonstration was permitted. It was established that in several instances salesmen refused to take the machine away after the demonstration and got signatures to contracts by false representations as to the nature of the contract. It was also clear that in many instances the purchaser was not in a financial position to buy such an expensive machine and without undue pressure would not have done so.

We agree with Judge VALENTE's opinion in dissent that there is nothing illegal or fraudulent in door-to-door sales, nor in inducing sales by offering credits for leads to sales to others. However, we believe that the method by which sales were induced — particularly paying for the privilege of demonstrating, presentation of the so-called "Bond of Friendship", and concealment of the nature of the product until the sales talk developed — created an atmosphere conducive to fraud. Concededly, this is not a sufficient base for injunctive relief, but it does furnish grounds, when coupled with proof of several instances of actual fraud, for a finding of "persistent fraud." Some 30 such instances were established at the trial. This is not an impressive number when measured against 20,000 sales.* However, that is not all the evidence. Over 1,000 persons who signed contracts refused to pay their installments. There is no proof that all of them claimed fraud, but it should be recalled that most of the sales were made to low-income people who, without legal representation, were in no position to make such an assertion. Also, there were over 100 complaints of fraud in the selling made to the Better Business Bureau. An interview between the executive officers of defendants and that bureau resulted in a significant comment made by the former. It was stated that they could not control their salesmen. We conclude that these facts make a sufficient showing of persistent fraud.

As to the relationship of the defendants, it appears that the vacuum cleaners are manufactured by Interstate Engineering Corp., a California corporation, and not a defendant. It has several distributors to whom it sells the cleaners at a price of $70 a machine. It also has devised the plan of selling and sup-

---

* This figure does not purport to be accurate. It is a witness' estimate, when pressed to give some estimate. Other evidence indicates that less than half that number would be nearer the fact.

plies the necessary documents. The distributor with whom the defendants deal is Compact Associates, Inc., a New Jersey corporation, likewise not a defendant. This company sells the machines at $90 a machine to subdistributors. The price to the consumer, with financing, comes to nearly $300. In addition, this company passes on the sales literature prepared by the manufacturer. It also conducts a course for the training of salesmen employed by the subdistributors. The subdistributors have the privilege of using Capital Discount Corp. to discount sales contracts, but may use any other finance company, or none at all if they so choose. But, as regards their sales, they follow the methods originated by the manufacturer and passed on to them by the distributor. The individual defendants Sindelman and Eisenberg own all the stock of Compact Associates, Inc., the New Jersey corporation, and of a New York corporation similarly named, which is a subdistributor.

All of the respondents, with the exception below noted, are doing the same kind of business in the same way and the only differentiation is the area covered. The atmosphere conducive to fraud is common to all of them. The fact that more instances were established as against some than as against others is not significant. Nor is the fact that against certain respondents the number, standing alone, would not suffice to establish persistent fraud.

The exception above referred to is Capital Discount Corporation. This company did no selling. It financed the conditional sales contracts for the companies owned by Sindelman and Eisenberg and such others as desired to use their services. No fraud was established against Capital Discount. The mere fact that it was owned by the principals of one of the selling companies is of no significance in this action, however important it might be if suit were brought on any of the contracts assigned to it. The Attorney-General did not seek to have any particular sales contract avoided. And such relief as was sought against this defendant, namely, for improper practices in the collection, was not established. Furthermore, it is doubtful if such practices could be the subject of injunction pursuant to the Executive Law. The complaint against this respondent should have been dismissed.

The judgment consequently requires modification. Moreover, the findings of fact go far beyond what was established and in certain instances relate to facts that are altogether irrelevant. The conclusion of law is satisfactory. It is unnecessary to discuss the so-called prayer for relief attached to the findings as this, except as it is reflected in the judgment itself, is mean-

ingless. Certain of the ordering paragraphs of the judgment rest on no foundation of proof in the record, or are immaterial to accomplish the purposes of the action or impose restrictions not warranted in law. In these categories are the third, fourth, fifth and sixth ordering paragraphs.

Judgment should be modified by dismissing the complaint against Capital Discount Corp., and striking the third, fourth, fifth and sixth ordering paragraphs. Findings of fact should not be approved and new findings should be substituted. Judgment as so modified should be affirmed, without costs.

### FINDINGS

1. That respondents engaged in a centrally directed plan to sell vacuum cleaners manufactured by Interstate Engineering Corp.

2. That, pursuant to this plan, corporate defendants' salesmen, going from door to door, represented that they were demonstrating a new product; that they represented that they would and, in fact, did, pay to prospective buyers $5 or the equivalent for observing the demonstration; that they gave to prospective buyers a document called a "Bond of Friendship" and a written explanation of the same; that they stated that this procedure was in lieu of advertising; and that they represented that a bonus would be paid for leads to sales.

3. That in addition, corporate respondents' salesmen persistently made representations beyond what was authorized by said respondents to the effect that no sale was being made, that the prospective purchaser was only giving a receipt for the machine left with him, that the purchase price was less than that stated, and other false and fraudulent representations to induce conditional sales contracts to be made.

4. That the method of selling authorized by corporate respondents provided a ready cover for its salesmen to exceed their authority and use fraudulent means to obtain sales contracts, by concealing the basic nature of the transaction in the initial stage and accompanying the sale by the devices described above.

5. That in a number of cases salesmen did make fraudulent representations and that corporate respondents were unable to prevent them from so doing.

6. That the sales practices of respondent corporations amounted to persistent fraud.

7. That all of respondent corporations used the same methods and adopted common plans of procedure.

8. That the individual defendants are officers and employees of the corporate defendants and either directed or carried out the sales practices above described.

VALENTE, J. (dissenting). I dissent and would reverse the judgment herein — obtained in a proceeding brought pursuant to subdivision 12 of section 63 of the Executive Law — enjoining appellants from engaging in certain allegedly fraudulent practices in the direct sale of home-cleaning units in the State. I would order a new trial on the ground that the evidence does not sustain the judgment.

The petition of the Attorney-General, in seeking an injunction, charges the individual and corporate respondents with fraudulent practices in the use of a so-called referral plan in the sale of vacuum cleaners to the public. Under such referral plan, also denominated as the " Owner Recommendation Program ", the purchaser of the Compact unit agrees with the seller to give the seller leads to other persons, and in consideration the purchaser receives a fee to be applied as a credit to the contract price of the purchased article. If the purchaser arranges an appointment for a salesman to demonstrate the product to another person and the demonstration results in a sale, the purchaser receives a credit of $25 from the company. In some instances the customers are offered $12.50 for arranging four demonstrations even if no sale results. The referral plan is used by the manufacturer of the product as a substitute for conventional advertising. Apparently, no statute or case law prohibits the use of the referral method. The instant case is predicated upon fraudulent practices in the methods used in operating the plan.

In support of his case, the Attorney-General called some 30 to 35 purchasers to testify as to the acts of fraud employed by salesmen in inducing purchase contracts. In summary, the deceptive practices included misrepresentations that the purchase contracts were revocable, misrepresentations as to the nature of the conditional sales contracts that were signed, and the gaining of admission into the homes of prospective purchasers by offering $5 for the demonstration of an undisclosed article.

Since the judgment is directed against all of the respondents, there must initially be some identification of the spheres of their activities in order properly to assess the weight of the evidence against them. Compact Associates, Inc., a New Jersey corporation, which has a distributor's franchise to sell the vacuum

cleaners in the metropolitan New York area, was not named as a respondent in this proceeding. This New Jersey corporation purchases the vacuum cleaners from a California corporation, and sells them to respondents Compact Associates, Inc., a New York corporation (hereinafter "Compact Associates"), Compact Island, Inc., Compact Nassau, Inc., Compact Hempstead, Inc., and Richmond Agency, Inc. Appellant, Capital Discount Corp., is a finance company in New Jersey, which factors the conditional sales contracts resulting from the sales of units by the other appellant companies. Hyman Sindelman and Nathan Eisenberg own and operate Capital Discount Corp. and are also officers and stockholders of Compact Associates. Appellant Lokos is connected with Compact Nassau and Compact Hempstead; and appellant Chavis is a salesman.

Appellants called no witnesses at the trial. Appellant, Eisenberg, however, was called as a witness by the Attorney-General, and he gave testimony as to the make up and relationship of the various corporate respondents.

In aid of his case, the Attorney-General offered the testimony of Robert Bechtol, a representative of the Better Business Bureau. He testified that the bureau had received less than 100 complaints over a period of years relating to the sale of Compact units. He further testified that the complaints were called to the attention of the various Compact companies who replied to them; and that he, Bechtol, had met with Eisenberg and Sindelman to discuss the complaints and to see what could be done to prevent abuses. It was Bechtol's testimony that these meetings were generally followed by desirable results, but that the problems would arise again at some later time. According to Bechtol, respondents Eisenberg and Sindelman stressed their inability to control the activities of some salesmen, and also that certain salesmen were discharged following complaints.

Finally, the Attorney-General called one Langer, a member of the New York Bar, to give testimony as to his experience as the attorney for Compact Associates and Compact Island in connection with the collection of claims upon default of purchasers.

The sweeping injunction ordered herein was granted pursuant to the provisions of article 5 (§ 63, subd. 12) of the Executive Law. That section permits the Attorney-General to apply for an injunction enjoining "the continuance of such business activity or of any fraudulent or illegal acts" whenever it appears that any person is engaged "in repeated fraudulent or illegal acts" or otherwise demonstrates "persistent fraud or illegality in the carrying on, conducting or transaction of

business ". The gravamen of this section is the element of " persistent " fraud. Isolated, single acts of fraud are not subject to correction under this statute.

However, it is well established that where a charge of fraud is made it must be established by clear and convincing proof. (*Manchel* v. *Kasdan*, 286 App. Div. 483, 484, affd. 1 N Y 2d 734; 24 N. Y. Jur., Fraud and Deceit, § 284.) Fraud will not be presumed, it must be proven by a fair preponderance of the credible evidence. (*Chemical Corn. Exch. Bank* v. *Wassung*, 8 A D 2d 788, affd. 7 N Y 2d 337.) Where the charge is " persistent " fraud, the burden of establishing the fraud is not diminished.

As I analyze the testimony in this case, it appears that the most the Attorney-General has established is that an inference may be drawn that there is a likelihood that fraud was practiced in some of the sales of the Compact outfits. A likelihood or surmise, however, is no substitute for a compelling inference that defendants engaged in " persistent " fraud.

As to respondent Capital Discount, the theory upon which it has been enjoined is that it was knowingly purchasing conditional sales contracts procured by fraud. Its knowledge is inferred from the fact that Eisenberg and Sindelman were its officers. But the evidence does not establish the predicate of that inference, i.e., that either Sindelman or Eisenberg made or procured any fraudulent sales, or transferred any contract to Capital Discount with knowledge that it was procured by fraud. Further proof is necessary if Capital Discount is to be enjoined.

There is testimony that salesmen in certain instances did promise, cajole and even misrepresent in order to make a sale. But such evidence did not lead to the necessary conclusion that the conduct demonstrated " persistent fraud or illegality in the carrying on, conducting or transaction of business ", nor did it prove that such conduct was countenanced or induced by the respondents, Eisenberg and Sindelman.

Moreover, although respondent Compact Associates has also been enjoined by the judgment herein, the record fails to disclose a single conditional sales contract which was executed by that company. Nor did any of the witnesses testify that he bought from that firm. The testimony of the witness Eisenberg was to the effect that the subdistributor appellants were separate and distinct entities hiring their own salesmen. There was no evidence introduced to contradict this assertion. Consequently, there is no basis for ignoring the separate corporate entities.

Similarly, no pattern of fraud was proven against Compact Hempstead — (evidence of one sale) — or against Compact Nassau — (evidence of three sales). As to the appellant, Harry Lokos, the testimony was that he was the president of Compact Nassau and was connected with Compact Hempstead; but there is no evidence indicating that he had any knowledge of the circumstances of the few sales complained of. As to Richmond Agency, which did business in Staten Island, there is no evidence of any sale by that firm. Moreover, that company went out of business before the trial. As to appellant Chavis, a salesman, there was proof of only one sale by him.

There was, however, testimony as to an appreciable number of alleged fraudulent sales by salesmen of Compact Island, Inc. That evidence might just be enough to support the injunction against Compact Island. Since, in my opinion, there must be a remand for a new trial as to all the other appellants, the new trial should also include Compact Island, Inc. The findings made by the trial court do not distinguish the respondents and give no reliable guidance as to conclusions as to the responsibility of the various parties. It is impossible to tell just what weight the trier of the facts gave to the testimony regarding Compact Island.

Moreover, the entire evidence as to complaints must be considered in the light of the uncontradicted testimony of Eisenberg that Compact Associates sold between 15,000 to 20,000 Compact units since 1956 and that 4,000 units were sold in 1963. The comparatively small incidence of complaints as against the large volume of business is not indicative of wholesale fraud; particularly since the representative of the Better Business Bureau testified as to the co-operation given by Eisenberg and Sindelman when complaints were brought to their attention.

Upon the foregoing analysis of the testimony, it is apparent that the record does not support the findings by the trial court or the judgment entered thereon. The palpable insufficiency of the evidence as to all respondents except Compact Island, Inc. requires that there be, at least, a new trial.

RABIN, McNALLY and STEUER, JJ., concur in Per Curiam; VALENTE, J., dissents in opinion in which BREITEL, J. P., concurs.

Judgment modified by dismissing the complaint against Capital Discount Corp., and striking the third, fourth, fifth, and sixth ordering paragraphs. Findings of fact are not approved and new findings substituted. Judgment as so modified affirmed, without costs. Settle order on notice.