OPINION OF THE COURT
Eugene R. Wolin, J.
In 1979, in response to numerous consumer complaints, the Attorney-General initiated an investigation of the Turbo-Hydra-Matic 200 Transmission (THM 200), a component installed in various models of General Motors (GM) automobiles. GM began to equip its automobiles with the THM 200 in 1976 and the transmission was covered by GM’s new-car limited warranty against defects appearing during the first 12 months or 12,000 miles, whichever *372 came first.[1] The investigation of the Attorney-General was based upon an analysis of approximately 1,600 consumer complaints. That analysis indicated that, on average, the THM 200 failed to perform properly after 22,000 miles and that in approximately 75% of the cases studied, the THM 200 failed shortly after the expiration of the warranty period. The average cost to repair the transmission after the warranty had expired was $430 and there were several instances of repeated failures of a single transmission. In addition, for the years 1976 through 1979, the owner’s manual supplied by GM indicated that the transmission required no maintenance whatever until 60,000 miles when the transmission fluid and filter were to be changed. In the owner’s manual supplied after 1979, GM states that the transmission requires no maintenance until 100,000 miles when the filter and fluid should be changed. Further investigation revealed that by means of internal reporting procedures, e.g., dealer complaints and claims under the warranty, responsible officers and employees of GM became aware of significant defects in the THM 200. It is alleged that this information was available to GM as early as 1977 and that in response GM issued several internal information bulletins to dealers and service engineering personnel. However, this information was not made known to the public.[2] In March, 1982, the Attorney-General instituted this action against GM pursuant to subdivision 12 of section 63 of the Executive Law. In essence the Attorney-General alleges that the failure of GM to disclose the defects in the THM 200 to prospective customers was a fraudulent practice and further, that because officers of *373 GM knew of the premature failure rate of the transmission, the new car limited warranty and disclaimer of all other warranties was an unconscionable contract provision. It is alleged that GM is liable for reimbursement to all owners of vehicles with THM 200 transmissions for the cost of repairing or replacing that transmission. The Attorney-General also seeks to enjoin GM from equipping its automobiles with those transmissions. The complaint itself alleges five causes of action: failure to disclose a known defect; unconscionable limitation of warranties; deceptive warranty; failure to honor implied warranty; and unconscionable business practices. The matter is now before the court on the motion of GM to dismiss pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action or in the alternative to stay this action pending a resolution of other litigation.
Of the causes of action asserted in the complaint, the first, second, third and fifth arise from GM’s conduct and the application of the limited express warranty. The remaining cause of action, the fourth, claims a breach of an implied warranty. As this latter cause of action requires a different analysis it will be treated in a separate part of this opinion. The other four causes of action will be considered together.
In view of the defendant, subdivision 12 of section 63 of the Executive Law has no application to litigation arising from a typical consumer complaint, i.e., questions concerning the performance or durability of the product. Rather, defendant contends, subdivision 12 of section 63 was intended to regulate only such activities as pyramid sales, bait and switch sales and such statutory violations as misleading advertising (General Business Law, § 349) or violations of the Home Solicitation Sales Act (Personal Property Law, art 10-A). While the Executive Law clearly applies to such activities, the language of subdivision 12 of section 63 does not require the restrictive interpretation urged by the defendant. Although the suit of the Attorney-General arises from the factual context of a consumer product complaint, the essence of the suit is not the quality of the product per se, but the knowledge of the defect and *374 the attempt by GM to limit its liability by means of concealment and limited warranties for the defective product.
In the context of actions brought pursuant to subdivision 12 of section 63 of the Executive Law, the courts have recognized that the statute incorporates the common-law definition of fraud, but also expands that definition to create a new standard of liability (State of New York v Cortelle Corp., 38 NY2d 83). Scienter need not be established and courts have predicated liability upon a finding that the defendant had created an atmosphere conducive to fraud (Matter of Lefkowitz v Bull Inv. Group, 46 AD2d 25; Matter of People v Compact Assoc., 22 AD2d 129; Matter of State of New York v Bevis Inds., 63 Misc 2d 1088). The statute defines the word “fraud” or “fraudulent” to “include any device, scheme or artifice to defraud, and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions.” In the view of the court, the conduct of the defendant, as alleged in the complaint, runs foul of the statute in at least two particulars.
With regard to the allegations of knowledge by GM of the defective nature of the THM 200, the rule is clear that caveat emptor is no longer an effective shield. If one party has superior knowledge or has a means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud. (People v Federated Radio Corp., 244 NY 33; Rothmiller v Stein, 143 NY 581; Matter of Lefkowitz v Bull Inv. Group, supra; State of New York v Middletown Beef Co., 84 AD2d 834; Noved Realty Corp. v A.A.P. Co., 250 App Div 1; Matter of State of New York v ITM, Inc., 52 Misc 2d 39; Matter of State of New York v Bevis Inds., supra.) The complaint alleges that the responsible employees and officers of GM knew that the THM 200 would fail prematurely, that it required substantial repair or replacement prior to the mileage limits indicated in the owner’s manual and that defendant knew that the limited warranty was inadequate. Assuming the allegations of the complaint to be true as the court must on this motion (Rovello v Orofino Realty Co., 40 NY2d 633; 219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506), the *375 court finds that a cause of action has been stated for suppression and concealment of a material fact.
The complaint also states a cause of action for an unconscionable contractual provision. The concept of unconscionability is a flexible one and should be applied within the framework of the commercial transactions under scrutiny. Generally a clause will be found to be unconscionable if it is one which no person in his right senses would make and which no honest or fair man would accept (Industralease Automated & Scientific Equip. Corp. v R.M.E. Enterprises, 58 AD2d 482; Matter of Friedman, 64 AD2d 70). Factors which the court should consider in making its determination are the absence of meaningful choice, terms which are unreasonably favorable to one party and a gross disparity in bargaining power. In a consumer transaction it does not require a great leap of logic to hold that the nature and extent of the warranty provided will be an important factor in the decision to purchase a particular item. The complaint alleges that the responsible officers at GM knew that the THM 200 was defective and that its useful life would fall far short of the defendant’s own projections. This, coupled with the allegation that if the nature of the defect and the potentially inadequate warranty had been communicated to a consumer, it would have adversely affected his decision to purchase a GM automobile, adequately states a cause of action for unconscionable contractual provision and a deceptive warranty practice. It does GM little good to argue that it has fulfilled its obligations under the warranty. This action seeks to hold GM liable not simply for placing an inferior» product on the market, but for marketing an inferior product with knowledge that it was inferior and with knowledge that its warranty was inadequate to protect the consumer.
The argument that the statute, as applied to the facts of this case, is void for vagueness is not well taken. The statute is sufficiently clear in describing the type of commercial activity which is to be enjoined. It provides a definite standard and a fair warning of the activities to avoid. As such it passes constitutional muster (Parker v Levy, 417 US 733; Connally v General Constr. Co., 269 US 385; State of New York v Fey, 87 Misc 2d 987). The mere *376 fact that this statute has not previously been applied in the context of a breach of warranty in a consumer product transaction does not require a finding that the statute is vague and thus unconstitutional.
The fourth cause of action for breach of an implied warranty stands on a different footing. In the other causes of action, the Attorney-General could ground his complaint in the limited warranty offered by GM and his allegations with regard to the defendant’s fraudulent marketing practices. Causes of action in fraud, unconscionable contractual provisions and breach of the express warranty are actions which could have been brought by individual consumers; however, breach of an implied warranty is not. An action for breach of warranty is contractual in nature and absent a personal injury, there must be privity between the parties (Martin v Julius Dierck Equip. Co., 43 NY2d 583; Schiavone Const. Co. v Elgood Mayo Corp., 56 NY2d 667, revg 81 AD2d 221; Mack v Clairol, Inc., 69 AD2d 752; Hole v General Motors Corp., 83 AD2d 715; Steckmar Nat. Realty & Inv. Corp. v Case Co., 99 Misc 2d 212). In this matter, the only claim is for economic loss, i.e., the cost of repairs to the individual consumer and thus privity must exist. While GM has made an express warranty, an implied warranty will not attach by operation of law (Hole v General Motors Corp., supra). There is no privity between the consumers and GM and therefore no implied warranty runs to the consumer. Thus there is no basis to hold GM for a fraudulent practice with regard to its disclaimer of an implied warranty. The fourth cause of action for breach of an implied warranty mqst be dismissed.
Finally, the request of General Motors for a stay of this proceeding is denied. There are several other suits pending which involve substantially the same issues and which seek reimbursement to the consumers of the cost of repairing the THM 200.[3] However, there is no indication as to the posture of these other suits, e.g., has class certification been granted, has discovery commenced, are dispositive *377 motions pending. If other litigation is no farther advanced than the case at bar it would be an improvident exercise of discretion to grant a stay at this time (General Aniline & Film Corp. v Photo-Marker Corp., 28 AD2d 990; Pierre Assoc. v Citizens Cas. Co. of N. Y., 32 AD2d 495; Krisel v Phillips Petroleum Co., 32 AD2d 628).
Accordingly, the motion of defendant General Motors Corporation is granted only to the extent of dismissing the fourth cause of action for failure to honor implied warranty and is otherwise denied.

. A sample warranty sets forth the following provisions:
“oldsmobile: Oldsmobile Division. General Motors Corporation, warrants each new 1979 car.
“warranty begins: The warranty period begins on the date the car is first delivered or put in use.
“defects: This warranty covers any repairs and needed adjustments to correct defects in material or workmanship.
“no charge: Warranty repairs (parts and labor) will be made at no charge. A reasonable time must be allowed after taking the car to the dealer.
“repairs: Your Oldsmobile dealer will make the repairs or adjustments, using new or remanufactured parts.
“whichever comes first: This warranty is for 12 months or 12,000 miles, whichever comes first.”

. The findings of the investigation by the Attorney-General are contained in a document entitled “Attorney General’s Study of Hidden, Non-Hazardous Defects in the General Motors Turbo Hydra-Matic 200 Transmissions.”

. Skelton v General Motors Corp., US Dist Ct, ND Ill, No. 79-C-1243; Newton v General Motors Corp., US Dist Ct, ND Ill, No. 80-C-2151; Attard v General Motors Corp., Supreme Ct, Nassau County, index No. 21588/79; Morgan v General Motors Corp., US Dist Ct, SDNY, 80 Civ 1280 (GLG); Matter of General Motors Corp., FTC docket No. 9145.