**FOUR POINTS SHIPPING AND TRADING, INC., Plaintiff,**

v.

**POLORON ISRAEL, L.P. and TMT Homes, Inc., Defendants.**

No. 92 Civ. 2294 (VLB).

United States District Court, S.D. New York.

May 17, 1994.

Gregory J. Ligelis and David J. Burke, Robinson & Cole, New York City, for plaintiff.

Richard C. Goldberg and Steven Orel, LeBoeuf, Lamb, Greene & MacRae, New York City, for defendants.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

This litigation resulted from cancellation of an intended shipment of parts for prefabri-

cated housing to be manufactured in the United States and shipped to Israel. Plaintiff, which never owned or chartered any vessel for the voyage, nevertheless sought lost profits because the voyage never took place. The contract involved, however, was only to be activated if a related agreement with the manufacturer became effective. Instead, the manufacturer encountered financial difficulties and the project was aborted. For this and several other reasons, partial summary judgment was granted to defendants dismissing plaintiff's complaint insofar as it sought lost profits, but was denied insofar as plaintiffs sought out-of-pocket expenses. *Four Points Shipping & Trading, Inc. v. Poloron Israel, LP,* 846 F.Supp. 1184 (SDNY 1994) (the "March order"). The substance of that order is not repeated here, and familiarity with it is assumed.[1]

Plaintiff has moved for reconsideration of the March order and also requests in its memorandum of law an award of overhead costs. Apart from its request for overhead as part of out-of-pocket expenses, plaintiff submits no genuinely new arguments; the bulk of its submission consists of attempted recharacterizations of both the facts and the reasoning contained in the March order.[2]

■ Reconsideration is granted and the March order is reaffirmed as supplemented by this memorandum order with respect to treatment of overhead as part of out-of-pocket expenses. Such overhead could be allowed to the extent that it was reasonably incurred because of plaintiff's contract with one or both defendants. Overhead cannot be allowed to the extent it would have been incurred even without the Poloron contract. Overhead would not be reasonably incurred in connection with a single contract if that was the only significant project on which

plaintiff was working during the period involved, unless that fact had been made known to defendants before such expenses were incurred.

## II

The basis for denial of summary judgment to defendants with respect to plaintiff's out-of-pocket expenses was that even absent breach of contract, defendants may have induced plaintiffs to incur expenses for the benefit of defendants' intended shipment which it would be only equitable for defendants to pay when the project fell through. Whether or not such a duty may be enforced would depend on doctrines which may be available to plaintiff such as quasi contract or equitable estoppel, the applicability and scope of which have yet to be briefed by the parties. Presumably as a preliminary to determining whether or not to pursue this issue, plaintiff has raised the question of whether or not the kind of damages left open would include overhead expenses.

The type of damages left open by the March order would be those which were incurred because of the Poloron contract.

■ Overhead is defined as costs which "cannot be avoided" even if events at issue in a suit did not take place. *Indu Craft v. Bank of Baroda,* 1993 WL 535116 *13 (SDNY 1993); *Love v. Kwitny,* 772 F.Supp. 1367 (SDNY 1991); see also *V.S. International v. Boyden World Corp.,* 1993 WL 59399 *9 (SDNY 1993). Overhead in this sense refers to fixed costs required to be incurred independently of the particular matters at issue.

The antithesis of overhead in this sense is marginal variable cost incurred or avoided when an event occurs. See *Irvin v. Goodyear Aerospace,* 974 F.Supp. 241 (2d Cir.1992);

---

1. The March order left open the question of defendants' possible liability for out-of-pocket expenses, stating:

    "While ... Poloron may be liable to Four Points for the latter's out-of-pocket expenses, the parties have not separately addressed this question or the amount of out-of-pocket expenses which might be awarded."

2. For example, plaintiff emphasizes that it is not a broker but a potential charterer of a vessel

which might be but was not leased to carry the cargo. The March order is not to the contrary. It refers to similarities between plaintiff's position and that of a broker in that brokers, like plaintiff, ordinarily do not purchase, or commit to a seller to purchase, assets until their own customers are ready to act.

Plaintiff's motion is supported by a memorandum of law consisting of thirty-seven (37) pages; no additional affidavits or factual exhibits are submitted.

*Northeastern Tel. Co. v. AT & T,* 651 F.2d 76 (2d Cir.1981), *cert. denied* 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 654 (1982); Areeda & Turner, "Predatory Pricing and Related Practices Under Section 2 of the Sherman Act," 88 Harv L Rev 697 (1975); P. Samuelson, *Economics* 461-072 (4th ed. 1958); Note, 91 Colum.L.Rev. 1557 (1991); Note, 76 Minn.L.Rev. 1283 (1992).

The term "overhead" is also at times used in a more general vein to refer to indirect costs whether or not required for a particular task. Thus if hiring or maintaining a particular person on a payroll may be necessary to perform a particular task, and this entails renting space as well as paying accounting and other paperwork costs, such expenses even if colloquially referred to as "overhead" may—subject to the contingency mentioned in part III below—constitute a marginal variable cost rather than a fixed one with respect to that activity.[3] If required regardless of a particular arrangement, such costs would be fixed, not marginal and would not be covered by the issue left open by the March order.

### III

A dilemma would arise in the application of this distinction if certain costs such as office maintenance or basic staff expenses were incurred solely because of the contract at issue for the reason that no other significant activity occurred, thus placing the full burden of overhead of the entire operation on a single particular assignment. In some instances, such a situation is anticipated and accepted by all concerned, particularly when a very massive undertaking is involved, which may occupy a large portion or even all of the energies of a participant.

Plaintiff's position would appear the strongest both in regard to obtaining out-of-pocket expenses and in regard to inclusion of overhead of the type discussed here if it kept defendants informed in writing as the undertaking progressed of the amount and type of expenses incurred, and the amount and nature of effort being expended.

Were there to have been only a single project of the magnitude of the one at issue in progress at the time and were that situation undisclosed, anyone dealing with the entity might run at least two risks:

(a) a risk that the entity might not be able to survive to complete the job if supported only by a single project, and

(b) a risk that such costs as those at issue here might be much higher than otherwise anticipated in the event the project was unsuccessful.

The concept that the party with greater knowledge should disclose it to avoid unfair surprise is applicable here.[4] Unless such a situation were obvious, the party seeking to recover overhead of this type would ordinarily have the responsibility to have disclosed the situation to other parties to the project at the time if overhead of this type were to be recovered.

SO ORDERED.

---

**3.** Disallowance of overhead costs necessary to a job may make its performance unprofitable preventing its successful performance. Equally, exaggeration of overhead expenses adds to the cost of an activity with impacts detrimental to the economy. See Twentieth Century Fund, *Does Distribution Cost Too Much?* (1939). This is particularly true when essential functions are involved. See C. Hardy, *Wartime Control of Prices* (Brookings Institution Pub # 84, 1940); J. Hirsch, *Price Control in the War Economy* (1943).

**4.** See generally *Carlson v. GMC,* 883 F.2d 287 (4th Cir.1989), *cert. denied* 495 U.S. 904, 110 S.Ct. 1923, 109 L.Ed.2d 287 (1990); *Sierra Diesel Injection Service v. Burroughs Corp,* 890 F.2d 108, 112–15 (9th Cir.1989); *Martin v. Joseph Harris Co,* 767 F.2d 296 (6th Cir.1985); *State v. GMC,* 120 Misc 2d 371, 466 N.Y.S.2d 124 (Sup. Ct.1993); Restatement (Second) of Torts § 551 (1979); Prosser, "The Implied Warranty of Merchantable Quality," 27 Minn L Rev No 2 at 117 (1943).